# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50661

United States Court of Appeals
Fifth Circuit

**FILED**

April 10, 2017

Lyle W. Cayce
Clerk

JAVIER CABRAL,

> Plaintiff–Appellant,

versus

MEGAN J. BRENNAN, United States Postmaster General,

> Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH and HAYNES, Circuit Judges, and JUNELL, District Judge.[*]
JERRY E. SMITH, Circuit Judge:

Javier Cabral appeals the dismissal of his Title VII retaliation claim. According to Cabral, his employer suspended him for two days because he complained of workplace discrimination and harassment. Because the district court's procedural error was harmless, and Cabral's two-day suspension did

---

[*] District Judge of the Western District of Texas, sitting by designation.

No. 16-50661

not constitute a materially adverse action, we affirm.

I.

Cabral is a letter carrier for the United States Postal Service (the "Postal Service"). In 2012 and 2013, he complained repeatedly of discrimination, harassment, and retaliation at the hands of his supervisors, filing three Equal Employment Opportunity ("EEO") complaints and numerous union grievances. The Postal Service portrays Cabral as a difficult employee and alleges that he struck one of his supervisors with a postal vehicle and engaged in various acts of insubordination.

Cabral sued the Postal Service under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. *See* 42 U.S.C. § 2000e; 29 U.S.C. § 621 *et seq.* Cabral alleged that the Postal Service created a hostile work environment, harassed him, retaliated against him, and discriminated against him on the basis of his race, national origin, and age, though he later withdrew some of those claims. Cabral is Mexican-American and was in his mid-40s when the alleged misconduct occurred.

The district court granted summary judgment for the Postal Service on all remaining claims except for one: that the Postal Service had retaliated against Cabral by placing him on unpaid leave on September 9, 2013. That retaliation claim is the subject of this appeal.[1]

Most of the relevant conduct occurred in September 2013. On September 3, Cabral returned to work after a suspension related to the incident in which he allegedly struck a supervisor with a postal vehicle. Cabral contends

---

[1] Cabral brought two retaliation claims, one related to an earlier suspension and one related to the September 9, 2013, suspension. For ease of reference, we refer to the retaliation claim rooted in the September 9 suspension as "the retaliation claim." The other retaliation claim was dismissed in the initial summary judgment order.

No. 16-50661

that upon his return, a supervisor began "badgering" him with questions. On September 9, Cabral was placed on unpaid leave after a supervisor asked him to produce a valid driver's license and he failed to do so. After two days, he was allowed to return to work. A few weeks later, he was reimbursed for any lost pay.

Although Cabral claims that he was placed on leave in retaliation for filing complaints, the Postal Service claims it was because his supervisors believed he was operating his postal vehicle with a suspended driver's license. Cabral admits that his license had been suspended for a DWI conviction and that he failed to notify his supervisors of the suspension, in violation of Postal Service rules. Though Cabral did have an occupational license, which would have permitted him to drive postal vehicles despite the suspension, his occupational license may have been invalid at the time because of his failure to pay an administrative fee. In any event, when Cabral was asked to produce a valid license, he failed to do so.

After the court had denied summary judgment on the retaliation claim, the Postal Service moved for reconsideration. It challenged the ruling on the ground that Cabral had failed to present sufficient evidence that the two-day suspension amounted to a "materially adverse action" under Title VII. The court granted the motion and dismissed the retaliation claim. Cabral appeals that order.

## II.

Cabral raises two issues. First, he claims that the district court erred by analyzing the Postal Service's motion for reconsideration under Federal Rule of Civil Procedure 59(e) instead of Rule 54(b), which allows district courts to revise interlocutory orders. Cabral is correct: Because the order granting partial summary judgment was interlocutory, the court should have analyzed the

3

No. 16-50661

motion for reconsideration under Rule 54(b)[2] instead of Rule 59(e), which applies to final judgments.

The Postal Service agrees that this was error. It was, however, harmless. The court acted within its authority to revise interlocutory orders. Though it applied the wrong rule of procedure, the rule it applied carried with it a standard more exacting than the one that the court should have applied.[3] Cabral does not explain how he could have been harmed by the procedural error, so there is no reason to reverse on procedural grounds.[4]

## III.

Second, Cabral claims that the district court erred in holding that he had failed to state a claim. To state a claim for retaliation under Title VII, a plaintiff must show that "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action."[5]

---

[2] *See Calpetco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414–15 (5th Cir. 1993) (stating that "a partial summary judgment is interlocutory in nature") (citation omitted).

[3] Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence," and it is "an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (alteration in original) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). In contrast, under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) (citing FED. R. CIV. P. 54(b)), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc); *see also Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015) (explaining that the higher standard in Rule 59(e) reflects the fact that judgment has already been entered, while the "more flexible" Rule 54(b) standard reflects the district court's inherent power to grant relief from interlocutory orders "as justice requires.").

[4] *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519–20 (5th Cir. Unit A Jan. 1981) (explaining that "[t]he major policy underlying the harmless error rule is to preserve judgments and avoid waste of time").

[5] *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015) (citing *Aryain v. Wal–Mart Stores Tex. LP*, 534 473, 484 (5th Cir. 2008)).

No. 16-50661

Our focus is on the second element.  For an employer's act to qualify as a materially adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted).

In its initial order denying summary judgment on the retaliation claim, the district court found that Cabral had suffered a materially adverse action when he was placed on unpaid leave for two days.  In a footnote, the court suggested that *White* announced a *per se* rule that a suspension without pay constitutes a materially adverse action.  In fact, *White*, 548 U.S. at 72–73, established that a suspension without pay *could* constitute a materially adverse action, depending on the particular circumstances.

The Postal Service made this point in its motion for reconsideration.  The court agreed that it had misinterpreted *White* and, after examining the record, determined that it had erred in denying summary judgment.  Accordingly, it dismissed Cabral's retaliation claim.

We agree with the district court's analysis.  The plaintiff in *White* was placed on unpaid leave for thirty-seven days, causing her to fall into a deep depression.  *Id.*  The Court, focusing on the physical, emotional, and economic burdens borne by the plaintiff as a result of her suspension, decided that she had established sufficient evidence of a materially adverse action to defeat summary judgment.  *Id.* at 70–73.

Cabral's situation is easily distinguishable.  Unlike the plaintiff in *White*, Cabral has not shown that his suspension exacted a physical, emotional, or economic toll.  He offers conclusional statements attesting to the emotional or psychological harm he suffered because of the two-day suspension, but he

provides no documentation of any alleged harm.[6]  He points to the number of grievances he has filed against the Postal Service related to purported discrimination, harassment, and retaliation, but those complaints are not relevant to whether the two-day suspension in September 2013 constituted a materially adverse action.[7]

Cabral has not stated a claim for retaliation under Title VII.  The judgment of dismissal is AFFIRMED.

---

[6] *See Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 707 (5th Cir. 2016) ("A bare-bones allegation that an assignment of janitorial duties is a materially adverse action is only an unsupported conclusory claim.  Such a bare allegation fails to provide the contextual detail that is required for materially adverse actions." (citation omitted)).

[7] We generally consider a suspension to be a discrete event.  *See Battle v. United Parcel Serv., Inc.*, No. EP-10-CV-0361-KC, 2011 WL 8202606, at *6 (W.D. Tex. Dec. 21, 2011).