# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 3, 2024

Lyle W. Cayce
Clerk

―――――――

No. 24-10215

―――――――

Emily Dixon, Psy.D.,

*Plaintiff—Appellant*,

*versus*

Merrick Garland,

*Defendant—Appellee*.

―――――――――――――――――――――――

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CV-19

―――――――――――――――――――――――

Before Clement, Graves, and Willett, *Circuit Judges.*

Per Curiam:[*]

Emily Dixon sued the Federal Bureau of Prisons for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964. The district court granted summary judgment for the Bureau, and we AFFIRM.

I

Beginning in 2015, Emily Dixon was employed as a psychologist by the Bureau of Prisons at the Federal Medical Center Carswell in Fort Worth,

―――――――――――――――――

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

Texas. In 2020, she was promoted and served as coordinator in the Dual Diagnosis Residential Drug Abuse Program and Sex Offender Management Program. She resigned in September 2023.

The factual basis for Dixon's claims is muddled, at best. The district court focused on a shoulder injury Dixon sustained in 2019 that prevented her from—according to her doctor—working around inmates or firing a firearm. In response to the note from Dixon's doctor, the Bureau convened a committee to find Dixon a suitable accommodation. The committee decided to assign Dixon a night shift in the control room, which Dixon grudgingly accepted. In July 2020, Dixon received clearance from her doctor to return to normal duties. When she tried to begin daytime duties, she was sent home pending review of the clearance note. Later that month, she resumed her pre-injury duties.

Dixon's complaint, however, tells a far more complicated tale. Throughout her tenure at FMC Carswell, Dixon claims she was harassed, discriminated against, and retaliated against for her continual complaints against her supervisor—Daniel Kim—and her assistance in co-workers' employment claims. Dixon filed at least two internal Equal Employment Opportunity complaints, and in August 2022, one year before her resignation, Dixon sued the Bureau, alleging sex discrimination and retaliation for "complaining of illegal discrimination" and "aiding another employee's complaints of illegal discrimination" under Title VII.[1]

The district court granted summary judgment for the Bureau, and Dixon timely appealed.

---

[1] Dixon writes "gender discrimination," but we interpret it by its legal phrasing, "sex discrimination."

## II

We review summary judgment de novo, applying the same standards as the district court. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

There are three main issues on appeal: (1) whether Dixon identified a similarly situated employee within the meaning of Title VII; (2) whether Dixon shows a prima facie case of retaliation; and (3) whether the district court denied Dixon due process.

## A

Under Title VII, it is an unlawful employment practice for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] . . . sex." 42 U.S.C. § 2000e-2(a)(1). Generally, to plead a disparate-treatment claim under Title VII, a plaintiff must allege facts plausibly showing "(1) an 'adverse employment action,' (2) taken against a plaintiff 'because of her protected status.'" *Hamilton v. Dallas County*, 79 F.4th 494, 502 (5th Cir. 2023) (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (en banc)).[2] Direct evidence of discriminatory intent—that an employee was fired *because of* her protected status—is rare, so "an employee ordinarily proves her claim through circumstantial evidence." *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th

---

[2] Dixon makes a disparate-treatment claim, not a disparate-impact claim, and accordingly alleges intentional discrimination by the Bureau. *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).

No. 24-10215

Cir. 2022). When using circumstantial evidence, a plaintiff must first establish a prima facie case of sex discrimination under Title VII. *Id.*

A prima facie case of sex discrimination requires an employee to demonstrate that "(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably." *Id.* at 997–98 (quoting *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)).

There is no dispute that Dixon is a member of a protected class and was qualified for the position she sought. But she fails to satisfy the fourth element: "that she was treated less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances." *Id.* at 998. Comparators are "similarly situated" if they have the same "job responsibilit[ies], experience, and qualifications" as the plaintiff. *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018). The district court also addressed the third element—whether the reassignment of Dixon to the nightshift as an accommodation for her shoulder injury constituted an "adverse employment action" within the meaning of Title VII. But because Dixon failed to identify a legitimate comparator in her complaint or subsequent briefing, this element of the prima facie case need not be addressed.

Dixon fails to point to a single similarly situated employee outside her protected class. Dixon makes only four allegations about male-female treatment by Bureau staff:

- "[Dixon] experienced [Daniel] Kim's efforts to ingratiate himself and develop a dependency relationship with female psychologists";

- "[Daniel] Kim tried to develop such a relationship with Dixon as an intern, he invited her to dinner with no other psychology staff present, but Dixon declined, and Kim sought relationships with other female psychologists";

- "Daniel Kim did not treat male psychologists . . . the same way he treated female psychologists"; and

- "Other similarly situated psychologists, both male and female, did receive . . . pay raises," while she did not.

Notably, the potential comparators that Dixon provides are *other female doctors*; Dixon cannot point to a similarly situated doctor *outside her protected class* who received preferential treatment.[3] For example, Dixon identifies Dr. Hayley Blackwood, Dr. Katherine Wenzel, and Dr. Nallely Galvan as three female employees who received pay increases while Dixon did not. Because Dixon fails to identify a similarly situated employee outside of her protected class, she cannot demonstrate a prima facie case of sex discrimination under Title VII. *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017) (the failure to identify a comparator "alone justifies dismissal of [the plaintiff's] Title VII claim").

The district court's grant of summary judgment on Dixon's sex-discrimination claim can be affirmed on this basis alone.

B

Dixon's retaliation claims also fail.

---

[3] Dixon identifies one male doctor in her deposition, but he is not mentioned in her complaint, declaration, or briefing before this court. Furthermore, Dixon's vague allegation of sex-based disparate treatment—that male psychologists were not treated "the same way" as female psychologists is insufficient because it does not identify a specific, similarly situated comparator. *See Saketkoo*, 31 F.4th at 999 (describing the plaintiff's provision of insufficient evidence to show individual comparators are similarly situated to plaintiff); *Herster*, 887 F.3d at 185 (same).

To survive summary judgment, a Title VII retaliation plaintiff must first make out a prima facie case. *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023). To do so, a plaintiff must demonstrate that "(1) [she] engaged in conduct protected by Title VII; (2) [she] suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Hudson*, 58 F.4th at 231 (quoting *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017) (quotation marks and citation omitted)).

Dixon's retaliation claims are woefully insufficient; she fails to point to any specific evidence of retaliation outside her conclusory statements that she "suffered retaliation and harassment." Also absent from Dixon's complaint is any evidence of a causal connection between her allegedly protected activity and the adverse action of the Bureau. For example, Dixon claims she suffered retaliation by being subjected to "Threat Assessment" meetings, but she does not identify an adverse employment action that *resulted* from these meetings, nor does she make any showing of causation. Furthermore, all the "evidence" provided by Dixon originates from her declaration; there are no documents or other forms of testimony outside of Dixon's assertions to support causation, which is an "essential component" of her claim. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)); *see Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("[U]nsubstantiated assertions are not competent summary judgment evidence."). Since it is not our task to make a party's argument for her, we cannot find that Dixon provided evidence to show she suffered retaliation because of her protected acts. *See Ragas*, 136 F.3d at 458 ("The *party* opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." (emphasis added)). It is Dixon who must "designate

6

specific facts showing that there is a genuine issue for trial"—a burden that is not satisfied "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (internal quotation marks omitted). She has not met that burden.

We thus affirm the district court's ruling as to Dixon's retaliation claims.

## C

Dixon also claims that she was denied due process during the district court proceedings because the court: (1) improperly entered a protective order; (2) improperly sealed court records; and (3) excluded her from certain depositions and denied her access to certain discovery materials.[4]

### 1

As to the protective order, Dixon's argument is forfeited. Dixon's counsel "approve[d] the form" for filing in February 2023—with no stated objections.[5] "A plaintiff abandons claims [before the district court] when it

---

[4] In sum, Dixon asserts that "[t]he trial court erred by granting Defendant's requests for secrecy and non-disclosure, by the improper protective order and sealing order, and by denying appropriate discovery."

[5] The imprecise language in Dixon's briefing may cause confusion. Interpreted favorably to Dixon, it appears that she opposes the entry of a protective order in *her* case as well as the sealing of judicial records in the *Campbell* case—a Title VII hostile-work-environment suit brought by a chaplain employed at FMC Carswell, decided in the same court as Dixon's claims. *In re Campbell*, No. 4:21-CV-0881, 2022 WL 4295260 (N.D. Tex. Sept. 16, 2022), *aff'd sub nom.*, *Campbell v. Garland*, No. 22-11067, 2023 WL 7266990 (5th Cir. Nov. 2, 2023), *cert. denied*, 144 S. Ct. 1346 (2024) (mem.), *reh'g denied*, 144 S. Ct. 2651 (2024) (mem.). Although she occasionally references a "sealing order entered in *this* case," there is not a general "sealing order" in the record—only two unopposed motions by both parties to enter appendices under seal, which the district court granted and are addressed below. Because we control only the case before us, we address Dixon's objections to the protective order in *her* case, not *Campbell*.

fails to address the claims or oppose a motion challenging those claims." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022). And "when a party does not address an issue in his brief to the district court, that failure constitutes waiver on appeal." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 n.70 (5th Cir. 2023) (citation omitted). Dixon did not protest the entry of the protective order until October 2023, almost eight months later, and gave no reason for her sudden opposition besides the order's general impropriety. And while Dixon attempts to revive her argument here, she cannot do so. *United States v. Olano*, 507 U.S. 725, 733 (1993) ("[F]orfeiture is the failure to make the timely assertion of a right . . . ."). Because Dixon failed to timely object to the protective order in the district court, her argument is forfeited on appeal.

2

As to the sealing of court records, Dixon has also forfeited her argument. Dixon did not respond to the Bureau's motion for leave to file its summary judgment appendix under seal, and the district court granted the motion as unopposed. And when Dixon filed an appendix attached to her response, she also requested, with evident confusion, that the appendix be entered under seal. At the risk of sounding like a broken record, a plaintiff abandons claims before the district court when she "fails to . . . oppose a motion challenging those claims." *Terry Black's Barbecue*, 22 F.4th at 459. Because Dixon failed to timely object to the sealing of the summary judgment appendix in the district court, her argument is forfeited here. *Olano*, 507 U.S. at 733; *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 189 (5th Cir. 2007).

3

As to the exclusion of Dixon from certain depositions and Dixon's access to certain discovery materials, Dixon fails to show an abuse of discretion. *See Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258,

261 (5th Cir. 2011). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 224 (5th Cir. 2020) (citation omitted).

Dixon cites various alleged deposition and discovery abuses by the district court: "She was denied [the] opportunity to educate her counsel and . . . evaluate evidence"; "[She] was also denied the opportunity to assist her counsel in formulating strategy"; "She was not permitted to receive all of the evidence"; "[She] was denied discovery necessary to prove her claims"; and "Her attempts to compel discovery were rejected or ignored by the trial court." However, the only specific discovery violations that Dixon identifies are related to the Bureau's lack of compliance, which Dixon addressed with a motion to compel discovery. That motion was granted in part by the district court after the parties were ordered to meet and confer. While Dixon levels additional complaints at the Bureau in her briefing on appeal, she does not identify how the district court abused its discretion when issuing discovery orders.

Dixon also fails to show an abuse of discretion as to the classification of certain materials as "Attorney's Eyes Only." In a motion to compel discovery, Dixon asked the district court to order the Bureau to remove all classifications of documents as "Attorney's Eyes Only" and "Confidential." The district court, after reviewing Dixon's motion to compel, determined she hadn't complied with the procedures outlined by the protective order for challenging confidentiality classifications. The protective order required the parties to "first try to resolve the dispute in good faith on an informal basis, such as by production of redacted copies," and only then to object in writing and move for a court order. The district court found that the parties had not done so and denied Dixon's objections. Yet, Dixon continued to object to *every document* designated as "Attorney's Eyes Only" or "Confidential," so

the Bureau moved for an order preserving the designated status of those documents. Dixon argued that the Bureau's motion was untimely, but the district court granted it and overruled her objections to the designations.

The district court did not abuse its discretion in overruling these objections. As the Bureau points out, because Dixon continued to contest the designation of *every document*, Dixon failed to comply with the protective order's requirement to "resolve the dispute in good faith." The Bureau also argues that its motion was timely, as it was brought within fourteen days after "Dixon listed out every single document she challenged." Dixon doesn't contest timeliness in her reply. Dixon points to no other reason why the district court could have abused its discretion in granting the motion to preserve the designations.

For these reasons, Dixon has failed to show an abuse of discretion by the district court in handling the discovery disputes.

## III

The district court properly granted summary judgment for the Bureau. Dixon failed to show a prima facie case of sex discrimination or retaliation under Title VII. Additionally, she forfeited her arguments regarding the entry of the protective order and the sealing of court records, and she could not show an abuse of discretion as to the denial of her discovery objections. Accordingly, we AFFIRM.